Appellant 15569, Concranes v. Central Motor Wheel America Appellant, for or against, I will give you 15 minutes to decide. Mr. Farrah for the appellant. Mr. Farrah. Your Honors, I would request two minutes for rebuttal. May it please the court, Lisha Farrah, Jr., on behalf of the Appellant, Central Motor Wheel of America, I'm going to refer to them as CMWA because that full name is a mouthful. We're here today because we believe the district court, on a separate ruling from the one you just heard previously, improperly applied the Thompson v. Budd case to a Kentucky identification contract between CMWA and Concranes, and erred in applying the reasoning in Budd and ignored the more recent and on-point cases in Kentucky that would have resulted in the opposite result at the district court level. Let me just fundamentally explain a confusion I have. If we affirm the district court in the first case that Concranes is not liable, then is there still an indemnification fight going on between the employer and Concranes? I don't believe the ruling with regard to the first ruling is necessarily dispositive on my case. My case is determined by the language of the indemnification agreement and specifically the exclusionary language in it. I understand that, but what is the relevance of it? What is the remaining fight between CM whatever it is and Concranes? About $150,000 in attorney fees. When the district court entered their summary judgment in favor of Concranes on Mr. Bond's case, my motion for summary judgment on contractual and common law indemnity was pending. In its order, he asked the parties, do I even need to rule on this issue because it may be moot? So you're seeking $150,000? No. Concranes is seeking $150,000. That's because the indemnification agreement is very broad in its language and it says, I don't know, it's not just any judgment you'd have to pay, but it's expenses and costs and so on. So they win the case, but they want to get indemnified for the fees? Yes. Got it. Now, I am the owner. I'm the manufacturing facility. Concranes drafted this. It's an 18-page standard terms and conditions. The testimony is it's involved in every one of their contracts. On page 14, section 14 of this standard terms and conditions, it's indemnification language. There's no question this is drafted. Let me be simple again. Yes. Threshold stuff. You don't like Thompson. You think Thompson is wrongly decided. I think Thompson is fine in Michigan. I don't like Thompson in Kentucky. There's a Michigan statute that Thompson relies on that defines the term of art, the term sole negligence. But Thompson is a ruling, regardless of how the court got to it, it's a ruling about Kentucky law. Yes, sir. Absolutely. This circuit has spoken in a published opinion on Kentucky law, rightly or wrongly. We're a panel. We're bound by that. So how do we get around that? You spoke in 1999 on this issue. At that time, there was no Kentucky cases that addressed this issue on the books. Now, obviously, it's sitting in diversity. All the court can do is look to other Sixth Circuit states for direction on what a Kentucky court might do. And they looked at the Birdo case and its progeny that arrived at how Michigan jurisprudence tracked the... Excuse me. Is there a Sixth Circuit case that says Thompson is wrongly decided? Not that I'm aware of. Is there a Kentucky state court case that says Thompson was wrongly decided? There are state court cases that state, that reference Thompson, that consider Thompson, but don't hold its ruling... Is there a case that says Thompson was wrongly decided? No. So again, under the panel rule, even assuming we agree with you, how do we get around the panel? Are you familiar with the panel rule? Yes. How do we get around that? You get around it in diversity actions. The Thompson case itself states in the ruling that it is not to be binding or persuasive on future courts. It's not meant to be precedent. But at the time, the court stated that in the absence at this time of any other case authority, we deem this to be as instructive as any other case authority we can find. They use the term sole negligence based on the statute of Michigan, MCL 669.991. Am I right that Thompson has been cited favorably in Kentucky in Interfab as recently as 2014? But not for this issue. It's been cited in Interfab for the proposition that you can have contractual indemnification provisions based on the facts and circumstances that may allow the result in this case. However, Kentucky cases are clear and Interfab says this. You look to the agreement itself and to the clear intent of the parties to the agreement. And that's the dispute we have with the lower court in this particular case. It ignored the clear intent of the parties. It ignored the relationship between the parties. It ignored the contract language. There's an indemnification provision. In the very last sentence, it excludes Conner Crane's negligence. Now what it does, it uses the term, quote unquote, sole negligence. Same language that was used in Thompson. The same language that Thompson interpreted the Michigan statute that actually defined sole negligence. Kentucky doesn't have that. Our legislature has not taken it upon themselves to do that. And for good reason. We're a pure comparative fault state. We didn't have the same public policy issues that Michigan had when they enacted their statute. But I can't find any case that says that the parties can't, by mutual agreement, agree to sole negligence. But there is no mutual agreement. That's the point. Well, the language is absolutely clear. In the Interfab case, it had the same language. What the Interfab case relied on, though, was two distinguishing factors. First of all, the Interfab provision had clarifying language. This was very important to the Interfab court. It actually stated, after the sole negligence language, it went on to state, to the extent provided in this section, contractor agrees to indemnify owner for owner's acts or omissions, negligent or otherwise. The Interfab court found that because of Kentucky's strong reliance on a clear and unambiguous expression of a meeting of the minds, that one party is going to indemnify the other, it required that additional language. Also distinguishing, Judge McKee, in Interfab... Let me just ask you a slight question there. Does that case, if I go back and read it again, say that the Kentucky court is requiring that additional language, which is the word you just used, or does it simply refer to as a matter of fact that additional language was in there so they look at it? I think that's fair. Which is fair? The court did not say required. The court stated that we are finding we're going to agree to this because of the clarifying language, because it goes through the case precedent in Kentucky that you have to have a clear expression of a meeting of the minds, that one party is going to... You've got a pretty clear expression here of the circumstances under which indemnification does not apply. Except in this situation... Circumstances that do not exist here. Well, the circumstances that I would say do exist that would support our position. Kona Cranes is the only party providing a service under this agreement. We own the building. We have a crane. We're required by national law and standards to have it maintained, serviced, inspected. We contract with Kona Cranes. They're the crane expert, we'll call them. They're the only one providing this service. They drafted this agreement with no input from CMWA or anyone else with regard to its standard terms and conditions. The only thing that's negotiated are the first three pages of the offer, which talk about cost, the frequency of the inspections. You seem to continue to argue this is some sort of an adhesion contract. You've got two big companies here. One might be a little bigger than the other. I don't know about that. But why on earth would we suggest that there's some disparity of the bargaining power here? I'm not trying to suggest that, and I apologize. I'm trying to point out, though, how this is, when you look at this under the InterFab reasoning, even in that case, you had a, the court relied on the party that was drafting the agreement and also the type of services and the party providing those services. In this case, there's no indication of an express meaning of the minds that CMWA would agree to indemnify Kona Cranes for Kona Cranes' negligence when they're the only ones providing a service under the agreement. You seem to be arguing that some kind of evidence external to the agreement is required. I mean, some might say the agreement itself between parties of this type constitutes all the evidence that is needed of mutual assent and that you have no occasion to look to anything else. Kentucky cases look to two things. And you're correct. They look to the contract itself, the four corners. But they also look to the intent of the parties. And that's why the Kentucky cases— The intent of the parties can be reflected in the plain language of the agreement, correct? Correct, if it's clear and express and unambiguous. What about this is ambiguous or not clear or not express? Under this agreement, we will indemnify Kona Cranes for all this stuff except for the sole negligence of Kona Cranes. What the court has done in applying Thompson, they said— How is that not clear? Sole negligence is essentially creating a contributory negligence standard in this case. Well, it's what it says, though. I mean, the intent was for you to—it appears to me—was for you to indemnify if Kona Cranes, along with other parties, was found to be negligent. But you're not required to indemnify if any negligence is solely attributable to Kona Cranes. No. Now, what's wrong with that? I can't get any other meaning out of that. I'm sorry to interrupt. The lower court's ruling is essentially, unless Kona Cranes is 100% at fault, I owe Kona Cranes full indemnity. Well, that might be because that's what it says. Well, if they're 99% at fault, we have a pure comparative fault. We go to trial, it's 99% to Kona Cranes, 1% to someone— But who says that the parties by agreement can't agree to not follow that part of Kentucky law that applies absent an agreement? Because the term sole negligence is a term of art based on this Michigan statute that Thompson interpreted, and that's what the lower court incorrectly relied upon in assigning that definition to the sole negligence term in our case. Under Kentucky law, there is no such statute that defines as sole negligence, and that's why Interfab is so important. When it's interpreting sole negligence, the court in Interfab points out it's important to have this clarifying language because sole negligence on its own is not the clear expression of the meaning of the mind or an agreement between the parties. In order to make a party responsible, which is frowned upon by most courts— I'm not saying it can't happen, but it has to be that clear and express and unambiguous, and there has to be a clear delineation that the party who has taken on this responsibility to indemnify the other party for their own negligence is doing so clearly, and that there's no question concerning that. This language, absent the interpretation in the Thompson case and the definition, and absent any clarifying language like the Interfab court would reason, is not that clear expression. If anything, at best it's ambiguous, which would be, of course, construed against the only drafter of this agreement, which would be Conocrates. And what we believe the district court did in this case is it inappropriately applied Thompson, totally ignored Interfab, totally ignored quick delivery. These cases are decided after Thompson. They were aware of Thompson. They referenced Thompson. And despite that, they didn't. Thank you. Good afternoon. I guess it's still morning. It feels like afternoon to me. Jane Higgins on behalf of Conocrates. And again, it's the contractual indemnity issue that is before the court, and I would simply kind of hate to be redundant, but in determining these issues, Kentucky law is very clear that the nature of an indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself, USF&G, Kentucky Court of Appeals case. In making a determination, you look to the four corners of the document. If it's clear and unambiguous, there's no need to look outside of that to determine the meaning of the language contained in the document. This indemnification provision, as noted by the court, is abundantly clear and painfully unambiguous. These are two very large companies of equal bargaining power. And as Mr. Farah pointed out, they had a relationship. They currently are still working together. They've had a relationship since 1996. Mr. Farah stated that it was his understanding this indemnification is in all their contracts. That's not my understanding. But certainly it was in the two contracts at issue with CMWA and Conocrates in this litigation. Based on their history, the fact that CMWA entered into a contract containing this language with Conocrates not once but twice that we know of, probably multiple times more even than that. Certainly they were aware of it. They were aware of its terms. They were aware of the implications of the broad. The only question is attorney's fees, right? It's attorney's fees. That's all, Your Honor. Could I ask you a question about Interfab? You're familiar with that case. Yes, Your Honor. We cited that. I'm looking at this really pretty short opinion from the Kentucky Court of Appeals  That's really neat. And I can't say that I'm as good at this gizmo as I should be, but I'm looking at this Interfab opinion, and it starts out saying that the language in the indemnification agreement there, at least initially about sole negligence, seems to me to be identical to the language in this agreement. I have. Is that right? Your Honor, in our brief I cited, yes, I have the language here. Okay, now it goes on, and it says that it's also analogous to another unpublished decision of the Kentucky Court of Appeals, and in that case there might have been some additional language in it, but is this additional language that essentially your friend is saying was obligated to be in the indemnification agreement in order to achieve the results you're seeking, does Interfab say that? No, I think Mr. Fair conceded it doesn't say that, that it's required. My understanding from Mr. Fair's argument was he stated that it referenced that and stated it was helpful but not a requirement. And the language in Interfab, certainly Thompson's still good law. It's not overturned. And it states clearly it is identical, shall not apply to any liabilities arising from owner's sole negligence. That's the only. I'm trying to find any place in Interfab where it even says that additional language is helpful to the result in that case. I'm not aware. I haven't looked at that since I wrote the brief, and Your Honor would certainly know if it was there. I'm not aware that it is. He can answer that when he comes back. Yes, Your Honor. So it would, again, you have two parties, clearly equal bargaining power, global corporate entities that have a relationship going back 20-plus years, engage in these contracts all the time on a routine basis, very aware of the language, is bold, all capital letters, highly sophisticated companies, clearly aware of what the provisions of the indemnification aspect of the contract would require from CNWA with regard to Conocrane's negligence should an event occur. And under Kentucky law, as I think is really not an issue, you can contract away your own negligence. You can indemnify over your own negligence with the exception of sole negligence. So there's nothing in the provision that's contrary to Kentucky law. There is not only no evidence whatsoever that this was Conocrane's sole negligence. There's no evidence in the record that Conocrane's was negligent in any way or did not do cause or any way contributed to the accident. Therefore, the exculpatory part of the provision doesn't come into play here because there is clearly not Conocrane's sole negligence. The evidence in the case is that CNWA actually found its own employee negligent and issues with its own design of the area where the event occurred as causing or contributing to the accident. Based on that, it's clear, it's unambiguous. You have two parties of equal bargaining power, arm's length transaction. The provision is supported by Kentucky law, a longstanding case for 16 or 17 years. It's our position that the lower court's decision should be upheld. If you want to just tell me what paragraph you're referring to, what headnote number in InterFab you're relying upon, I'd be happy to look at that again later. Well, the court's reasoning in InterFab, in interpreting... Just tell me what paragraph in InterFab are you relying on? I'm trying to find this. Let's see, page 4 or 5. It is a paragraph, page 10, HN5. What's the paragraph start with? The words of a contract shall be given their ordinary meaning. A contract which is unambiguous, needs no construction, and will be performed in... The first words are fine. Okay. That's the paragraph? The InterFab agreement, the reason they upheld it, is because of the clarifying language. That does make it unambiguous and an express declaration of the agreement between the parties. InterFab did not rely on Thompson and the definition of sole negligence for a very good reason. It's because it recognized that the Thompson case was relying on a statute that actually created the term of art sole negligence, and Kentucky did not have that statute. This is decided after Thompson. So the court had to look at the intent of the parties and the language in the agreement and the duties between the parties. And in doing that, it looked at the additional clarifying language after sole negligence. You notice it does not cite to or rely upon, it doesn't say this issue has been resolved by Thompson as it relates to... More than one InterFab case? It's not a ten-page case. It doesn't look like it. May I approach? Sorry. Give it to the clerk and let her take it up. And I can't find a paragraph that starts with the words that you're using, so we'll read it. I'm consuming much too much of your time on this little pointer. As far as the duties of the parties in the contract and whether there's any external evidence, Kona Cranes is the only party providing a service under this contract. And if you look at the plain meaning of the exclusion, it excludes from the identification provision the negligence of Kona Cranes. There's no other reason it would be in there. If it was the intent of Kona Cranes to require CMWA to identify them for their own negligence, all they had to do was put it in there. You will... I'm sorry. We're listening. We're multitasking. You will identify us for our negligence, as the InterFab case did, as Kentucky courts require a clear, express understanding between the parties. So negligence... Time's up. Thank you very much for your arguments. We'll consider the case carefully. Thank you. Thank you, Your Honor. Court may call the next case.